NGHI T. LAM (SBN 313126)
NGHI LAM LAW FIRM
17111 Beach Blvd., Suite 212
Huntington Beach, CA 92647
Phone: 213-235-7969
Email:Nghi@NghiLamLaw.com

Attorneys for Defendant
CYRIL YU

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>CYRIL YU,<br><br>    Defendant. | No. 2:23-cr-00402 SI<br><br>DEFENDANT CYRIL YU'S SENTENING MEMORANDUM; EXHIBITS<br><br>DATE: June 28, 2024<br>TIME: 11:00 a.m.<br>JUDGE: HON. Susan Illston |

Defendant CYRIL YU, by and through his counsel of record, NGHI T. LAM, hereby submits Defendant's Sentencing Memorandum for the Court's consideration at the time of sentencing.

Respectfully submitted,

Dated: June 24, 2024

_____
Nghi T. Lam
Attorney for Defendant
CYRIL YU

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.
Introduction**

First and foremost, Mr. Yu owes an apology to the Court and the residents of San Francisco, and any individuals or entities that were affected by his actions. Exhibit 1. On March 8, 2024, Mr. Yu pled guilty to one count of Conspiracy to Commit Honest Services Wire Fraud, a violation of U.S.S.G. §2C1.1(a)2. Mr. Yu was hired by the San Francisco Department of Building Inspection as a Buildings Plan Engineer in 2014. Some time in 2018, Mr. Yu began taking bribes from Mr. Bassam Gassemzadeh to expedite the review and approval process of building plans. In exchange, Mr. Gassemzadeh took Mr. Yu to restaurants and handed him cash.

Mr. Yu did not engage in any of these activities the first four years of his employment. After that time, he took a temporary promotion and was under pressure by his seniors to expedite approving permits for big developers with whom they had connections. Exhibit 2. Mr. Yu knew that regardless of how things started, he was wrong. After much introspection, he left his position and the organization in 2021 (voluntarily) a year and a half before agents ever reached out to him.

The heavy weight on his conscience is also why he cooperated with agents immediately when he was approached. Mr. Yu has young children and elderly parents that he takes care of. In recent years, decided to give back to make up for his mistakes. He plays an active role in his community by volunteering at a senior center and coaching youth sports. He asks the Court for mercy so that he can serve those around him and continue to contribute to society. He

respectfully asks the Court for a sentence of probation and community service, and if the Court imposes custody time, then he respectfully asks that the Court allow him to serve his time under home confinement.

## II.
## Sentencing Considerations

The federal sentencing guidelines are no longer mandatory. *United States v. Booker*, 543 U.S. 220 (2005), 125 S. Ct. 738 (2005). A court can tailor a sentence in light of other statutory concerns. *Booker*, 125 S. Ct. at 757. Additional factors to be considered in sentencing are set forth in 18 U.S.C. § 3553(a)(2), which are most applicable in Mr. Yu's case.

    A. Section 3553(a)(2) Factors Support a Sentence of Probation or Home Confinement

The main directive in Section 3553(a) is for a sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)..." In addition to considering the nature and circumstances of the offense and the history and characteristics of the defendant, the court also must be guided by the directive of Section 3553 (a)(2) which provides the need for the sentence----

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to avoid sentencing disparities.

  1. Application of § 3553(a)(2) Factors to Cyril Yu

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

Mr. Yu, without a doubt, committed a very serious offense. Given his cooperation and willingness to admit his mistakes, and his willingness to leave the DBI on his own, a sentence of probation with community service or a sentence with home confinement will have a lasting effect, and restrictions to his freedom will give him ample time to reflect on his mistakes.

b. To afford adequate deterrence to criminal conduct

Mr. Yu has learned his lesson, and he even made a conscious decision to stop what he was doing and leave his environment. A sentence of probation with community service or a sentence of home confinement will make it clear to him and anyone else that anyone who does not respect the law enough will be harshly punished. This is Mr. Yu's first such offense, and sentencing him to probation or home confinement will mean that those considering breaking the law will understand that even for a first offense, there will be serious consequences.

c. To Protect the public from further crimes of the defendant

Both Mr. Yu and the public will benefit from a sentence of probation or home confinement. Although Mr. Yu has learned his lesson and took it upon himself to put an end to his wrongdoing, a sentence of probation or home confinement will ensure that Mr. Yu fully understands the weight of what he did, and it will protect the public from any potential wrongdoing.

d. To avoid sentencing disparities

Although Mr. Yu did not approach the Government himself, he did leave the DBI on his own. He himself put an end to his wrongdoing as a result of the guilt he felt. In addition, Mr. Yu admitted responsibility immediately and his cooperation was very

extensive. For two years, Mr. Yu made himself available to the Government and even actively participated in the Government's investigation of others. Given Mr. Yu's understanding of his own wrongdoing and his willingness to walk away from the situation, his extensive cooperation to help the Government, and his heartfelt efforts to be a contributing member of society, a sentence of probation with community service or a sentence of time served under home confinement will not create a sentencing disparity.

## III.
## Conclusion

Mr. Yu, at the core, is a good person. He realized the terrible mistake he had made and he walked away from it. As soon as he was approached by agents, he admitted wrongdoing immediately and did whatever he could to cooperate and help with the Government's investigation. To this day, he continues to do his best and give back to the community, and he respectfully asks the Court and everybody affected for forgiveness. He respectfully asks for a sentence of probation with community service or a sentence with home confinement so that he can continue to take care of those around him and continue giving back.

Exhibit 1

Your Honor,

I stand before you today overwhelmed with remorse for my actions and the profound betrayal of public trust they represent. The weight of my transgressions is heavy on my conscience, and I am deeply ashamed. I rationalized accepting compensation as fair payment for additional work, but I now recognize with clarity that this was an inexcusable lapse in ethical judgment. Allowing my position of public service to be compromised for private gain was an egregious violation of the sacred duties entrusted to me by the community I was meant to serve. I succumbed to pressure and temptation in ways that fundamentally betrayed my principles and brought disrepute to the values I once upheld. Words cannot fully convey the depth of my regret and remorse.

In the aftermath of these events, I have engaged in profound self-reflection and a transformative journey of personal growth. My experience at my subsequent employment with UCSF opened my eyes to the tremendous power of principled, ethical leadership to inspire excellence in meaningful ways. This reignited in me a passion for positive impact and using my skills to serve a greater good beyond personal interests. In an effort to realign my life with my deepest values, I have devoted myself to coaching youth sports and volunteering with elderly communities. Witnessing the compounding benefits of mentorship and service has been humbling and has fundamentally reshaped my priorities.

I am now steadfastly committed to a lifetime of ethical conduct in both my professional endeavors and personal affairs. My remorse is wholehearted, and I am prepared to accept the court's judgment and any punitive measures deemed appropriate. However, I am pleading for an opportunity to make amends and demonstrate the rehabilitative power of restorative justice initiatives. If permitted to pursue alternatives to incarceration such as probation or community service, I could remain a contributing member of society while taking tangible actions to atone for my violations.

I recognize the severity of my transgressions, but I humbly request leniency that would preserve my ability to care for my dependent children and elderly parents who rely on my support. I vow to never again betray the public's sacred trust or appear before a criminal court. You have my unwavering commitment to redemption through ethical conduct and moral leadership for the remainder of my days. Your Honor, I have stumbled greatly, but I am devoted to rising above this lapse through a lifetime of honorable actions and service to my community. I implore you to allow me the opportunity to prove my remorse through deeds that can uplift others. Thank you for your consideration.


Sincerely and wholeheartedly,

Cyril Yu

Exhibit 2

To the Honorable Judge,

It is with a heavy heart and the utmost respect for the judicial process that I address you regarding the transgression of my brother, Cyril Yu. The charges against him have deeply shaken our family's core values of integrity and honor, values we uphold dearly. While I cannot justify Cyril's actions, I humbly implore you to consider the exceptional character he has consistently demonstrated throughout his life and the potential external factors that have clouded his judgement.

From an earlier age, Cyril shouldered immense responsibilities as the eldest child of immigrant parents working two jobs tirelessly to provide for our family. Despite our humble beginnings and limited resources, his unwavering determination propelled him to remarkable academic achievements, culminating in an undergraduate and graduate degree in engineering from the prestigious University of California. His kindness, selflessness, and tireless work ethic have been the pillars of his character, making his recent transgressions all the more baffling.

Cyril's tenure at the Department of Building Inspection (DBI) regrettably exposed him to a toxic and unethical work environment.  As a fellow employee, I witnessed firsthand to the department's persistence disregard for ethical practices and the relentless pressure exerted by management on staff to conform. It was a common occurrence to observe our management personally escort their constituents directly to Cyril's workstation and loom over him while directing him to provide assistance. The situation was further compounded by the heart-wrenching loss of two colleagues to suicide within a five-year period, as well as blatant mistreatment and ostracization of those who dared to speak out. Cyril's close proximity to management immersed him in this corrosive culture, where unethical behavior was normalized, potentially contributing to his regrettable lapse in judgement.

While the circumstances do not absolve Cyril's transgressions, they offer invaluable insight into the external factors that may have influenced his actions. Three years prior, Cyril was fortunate to free himself from the toxic environment of DBI by securing employment at the University of California, San Francisco (UCSF). During his time at UCSF, Cyril frequently expressed his relief at the stark contrast between the two institutions, commending the positive work culture and unwavering support he received to perform his duties with integrity and effectiveness. This was a radical shift from the relentless pressure he had endured at DBI to compromise his principles. Cyril's subsequent positive experiences at UCSF, where his achievements were recognized and celebrated, confirms the profound impact a healthy work environment can have on an individual's ethical decision-making and overall well-being.

I am confident that Cyril's actions represent an isolated lapse in judgement that does not define his true character. He is a devoted father who has consistently prioritized the well-being of his children, and a loving son who has been a pillar of support for our family. Cyril's dedication to his profession and his tireless work ethic are matched only by his commitment to give back to the community though coaching and volunteering. His remorse over this incident is profound, and he stands prepared to undertake any measures necessary to atone for his transgressions and regain the trust of the community he has sworn to serve.

While Cyril's offense is inexcusable, it is crucial to recognize that he is not an inherently malicious individual. In light of the circumstances, I humbly implore you to consider enrolling Cyril in a restorative justice program. This would afford him the opportunity to atone for his transgressions though a meaningful community service and personal growth initiatives. Such a program would not only provide Cyril with a path towards learning, healing, and self-reflection, but would also enable him to contribute positively to society once again, leveraging his skills and experiences for the greater good.

Thank you for your time and consideration.

Sincerely,

Michelle Yu